Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
BLAKELY LAW GROUP
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401

*Attorneys for Defendant*
*Phil Brown*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN PERRY, an individual,<br><br>Plaintiff,<br><br>v.<br><br>PHIL BROWN, an Individual, and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 2:18-cv-09543 JFW (SSX)<br><br>**DECLARATION OF BRENT H. BLAKELY, ESQ. REGARDING INABILITY TO RESOLVE THE ISSUES CONTAINED IN PLAINTIFF'S MOTIONS TO DISMISS AND MOTION TO STRIKE PURSUANT TO THIS COURT'S ORDER (ECF NO. 42)**<br><br>Date:         na<br>Time:         na<br>Location:    Courtroom 7A<br><br><br>**Hon. John F. Walter** |

## <u>DECLARATION OF BRENT H. BLAKELY</u>

I, Brent Blakely, declare:

1.      I am an attorney for Defendant Phil Brown in this litigation.  This declaration is based upon an in-person discussion I had with Mr. Perry's attorney, Mr. Mark Lee, and is accurate to my best recollection.  As this Court's Order (ECF NO. 42) contemplates, Mr. Lee will be filing a separate declaration wherein he can add or correct the information I am now providing to the Court.

2.      Pursuant to this Court's Order (ECF No. 42) on February 4, 2019 I met in person with Mark Lee at his office in Century City, California.  During our conversation Mr. Lee and I had a meaningful conversation regarding the merits of Plaintiff's Motions, specifically:  1) whether this Court has personal jurisdiction over Defendant, 2) Defendant's motion to dismiss Perry's trademark claims, and 3) whether anti-SLAPP pertained to Perry's claims because, as Mr. Lee suggested, the speech being attacked was commercial speech.

3.      As to personal jurisdiction, I pointed out to Mr. Lee that Perry's jurisdiction over Mr. Brown, who lives in Tennessee, is premised entirely upon two tweets from Mr. Brown's girlfriend (who also lives in Tennessee) and a Facebook post by Mr. Brown, and that there was insufficient contact with California to support personal jurisdiction over Brown.  Mr. Lee responded that Mr. Brown must have known that Mr. Perry was a resident of California, and that the songs were written in California (in 1991).  Based upon my understanding of the law governing personal jurisdiction, which is contained in Mr. Brown's Motion to Dismiss for Lack of Personal Jurisdiction, I still believe that this Court does not have personal jurisdiction over this case.

4.      About Mr. Brown's Motion to Dismiss Mr. Perry's two Trademark Claims, Mr. Lee, citing *Hilton v. Hallmark Cards*, 580 F. 3d 874, 881 (9th Cir. 2009) correctly noted that California's anti-SLAPP statute does not apply to actions under the Lanham Act.  Given the fact that I was Paris Hilton's attorney in the *Hilton v.*

*Hallmark* litigation and won on that issue in the Ninth Circuit, I of course agreed with Mr. Lee and explained that the motion was a joint Motion to Strike under California's anti-SLAPP statute and a Motion to Dismiss pursuant to FRCP 12.  While unable to come to an agreement on the merits of whether Mr. Perry's Trademark claims were barred by the fair use doctrine, I agreed to split the two motions into a Motion to Dismiss the two trademark claims under the Lanham Act, and a Motion to Strike the two right of Publicity claims under California state law.

5.     About the two right of publicity claims under California law, I informed Mr. Lee that I would need to go back to the office and do some research on whether the commercial speech exclusion applied in the present case.

6.     Finally, during our discussion I made a proposal to resolve the issues contained in Mr. Brown's Motions.  I indicated to Mr. Lee that this case was about who owned what rights in connection with the four (4) Brown/Perry songs they recorded together in 1991. I suggested that Mr. Perry dismiss the trademark and right of publicity claims against Mr. Brown, and in return Mr. Brown would consent to jurisdiction in California.  This would leave only the declaratory relief action concerning the ownership of the Brown/Perry songs, which would be resolved by this Court.   Mr. Lee responded that he would speak with his client and get back to me regarding my proposal.

7.     The following day at 4:12 pm I received an email from Mr. Lee stating that Mr. Perry had rejected my proposal and inquired when I was going to respond to the two points raised regarding Mr. Brown's anti-SLAPP motion.  At 5:43pm that same day I responded with a detailed email setting forth the controlling authority regarding the commercial speech exception – it does not apply.  Furthermore, I agreed to split the anti-SLAPP motion and the motion to dismiss into two separate motions so as to avoid any confusion as to which motion is directed as which claims. Attached hereto as **Exhibit #1** and incorporated herein by this reference is a true and correct copy of my email exchange with Mr. Lee from February 5, 2019.

1       I declare under penalty of perjury under the laws of the United States of

2  America that the foregoing is true and correct.

3       Executed on February 6, 2019, in Manhattan Beach, California.

4

5

6       _____

7       BRENT H. BLAKELY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

**Brent Blakely**

| | |
|---|---|
| **From:** | Brent Blakely |
| **Sent:** | Tuesday, February 5, 2019 5:43 PM |
| **To:** | 'Mark Lee' |
| **Cc:** | Jessica Covington |
| **Subject:** | RE: Response to proposal re Jurisdiction Motion |

Dear Mark:

Thank you for your email, it really was a pleasure to meet you in person and discuss the case yesterday.

On the two points – I can see how the motion did not make it clear that the trademark claims were part of a motion to dismiss, while the publicity claims were the subject of the anti-SLAPP motion and motion to dismiss. I will split them in the next filing.

On the second point, Perry's contention that the two tweets and facebook are purely commercial speech and therefore not protected by anti-SLAPP, I respectfully disagree. Assuming for arguments' sake that the two tweets and one Facebook post are purely commercial speech (i.e, not intertwined with non-commercial speech) it is still protected by California's anti-SLAPP statute because it concerns a matter of public interest.

"The commercial speech exemption . . . is a statutory exemption to section 425.16 and should be narrowly construed." Simpson Strong-Tie Co., Inc. v. Gore, (2010) 49 Cal. 4th 12, 22. "The burden of proof as to the applicability of the commercial speech exemption . . . falls on the party seeking the benefit of it." Id. at 26.

The Court's ruling in *DuPont Merck Pharmaceutical Co. v. Superior Court*, (2000) 78 Cal. App. 4th 562 is instructive. In *DuPont* individuals representing the purchasers of a prescription drug used to thin blood brought a class action suit against the manufacturer of the drug, alleging that defendant made false statements before regulatory bodies, the medical profession, and to the public in connection with the drug. The trial court entered an order denying defendant's motion to strike the complaint under the anti-SLAPP statute. The Court of Appeal reversed, holding that the communications, while commercial, involved an issue of public interest:

"We find the answer to this question in the first amended complaint. Plaintiffs allege: 'More than 1.8 million Americans have purchased Coumadin, an anti-coagulant medication, for the prevention and treatment of blood clots that can lead to life-threatening conditions such as stroke and pulmonary embolism.' Both the number of persons allegedly affected and the seriousness of the conditions treated establish the issue as one of public interest." *DuPont* at 567.

Similarly, in the present case we need look no farther than the First Amended Complaint to determine that the tweets and facebook post about Perry concern a matter of public interest:

*6. Plaintiff is an American singer and songwriter. Best known as the former lead singer of the rock band "Journey" during that group's most*
*commercially successful periods from 1977 to 1987, and again from 1995 to 1998, Perry co-wrote a number of the band's greatest hits, including "Don't Stop*
*Believin,'" "Who's Crying Now," "Open Arms," "Separate Ways," "Any Way You Want It," and many more. Perry recorded seven albums with Journey, which has*
*sold about 54 million albums and singles in the U.S. and is estimated to have sold 75 million worldwide. On April 7, 2017, Perry was inducted into the Rock and Roll*
*Hall of Fame as a member of "Journey. "*

7. *Perry also has had a successful solo career. In 1984 he released his first solo album, "Street Talk," on CBS Records. Featuring the hit singles "Oh Sherrie"*
*and "Foolish Heart," that album has been certified "Platinum" by the Recording Industry Association of America ("RIAA").*
*In 1994 Perry released a second solo*
*album, "For the Love of Strange Medicine," that featured the hit "You Better Wait" and was certified "Gold" by the RIAA. Most recently, following an extended*
*hiatus, Perry on October 5, 2018 released a third solo album, "Traces," that has already reached Number 6 on the "Billboard 200" chart for the week of October 20,*
*2018, signifying that it was the sixth most popular music album in the U.S. during that week. Because of the quality of the music and the more than 20 years since*
*Perry released a solo album, there has been substantial publicity surrounding Perry and his "Traces" album before and since its release.*

8. *Throughout his career, Perry's singing voice and unique vocal style have been instantly recognizable by the public, and have garnered acclaim from*
*prominent musical peers and publications. Among other accolades, he was dubbed "The Voice" by fellow rock musician Jon Bon Jovi, and was ranked No. 76 on*
*"Rolling Stone" magazine's "100 Greatest Singers of All Time." A Steve Perry vocal performance is instantly recognizable as coming from Perry to a substantial*
*portion of the consuming public for this reason, and a subpar vocal performance could adversely impact the public's perception of Perry as a vocalist, musician and*
*performer. Perry is highly particular about the recordings he chooses to release in these circumstances, and he does not release music unless he believes that the*
*recording, music, and his own recorded vocal performance of the music, meet his standards*

9. *Due to his professional efforts and accomplishments, Perry has become widely known to the consuming public as the source of high quality vocal*
*performances, and on May 24, 2000, he was awarded a federal trademark registration in his professional name "Steve Perry" for prerecorded music. See*
*Exhibit "A." As five years has passed since Perry was awarded that registration, it now qualifies for "incontestable" status.*

Moreover, while the Legislature amended the anti-SLAPP law so that it generally would not apply to claims arising from commercial advertising (Cal. Code Civ. P § 425.17(c)), it provided a carve-out for "[a]ny action against any person or entity based upon the creation, dissemination, exhibition, advertisement, or other similar promotion of any dramatic, literary, musical, political, or artistic work, including, but not limited to, a motion picture or television program." Cal. Code Civ. P § 425.17(d)(2). As to such actions, the statute continues to apply.  Here, the action is based on the purported promotion of several songs and falls squarely within the exception enumerated above.

I'm happy to review any case law you believe supports your position, however, the law appears to be very clear on this point.

Regards, Brent

Brent H. Blakely, Esq.
Blakely Law Group
1334 Parkview Ave., Suite 280
Manhattan Beach, California 90266
Telephone:   310.546.7400
Facsimile:   310.546.7401
www.blakelylawgroup.com

**From:** Mark Lee <mark.lee@rimonlaw.com>
**Sent:** Tuesday, February 5, 2019 4:12 PM
**To:** Brent Blakely <bblakely@blakelylawgroup.com>
**Subject:** Response to proposal re Jurisdiction Motion

Brent:

      After our meeting I have consulted with my client concerning your proposal that Mr. Brown would consent to jurisdiction in California if my client agreed to dismiss the Lanham Act and right of publicity claims.  We have decided to decline your offer.

      I believe you were evaluating a couple of points we made regarding the SLAPP motion, and were going to respond today.  Please let us know your response when convenient.

      In a separate matter, as we discussed yesterday the Court has ordered us to participate in a private mediation before March 4, and to submit a report on or before March 8.  We obviously should comply with the Court's order.

      I believe you indicated that you were going to explore some options, and thus will wait for a few days before sending over a typical list of private mediators.  However, I suggest we move quickly, as it will take time to agree on someone and arrange a mutually acceptable mediation date that complies with the Court's order.  If I don't hear from you, I will send a list over.

Thanks,

Mark Lee

---

**Mark Lee** | Partner
RIMÔN, *Law Firm Evolved*
+1 310-361-5776 | mark.lee@rimonlaw.com
2029 Century Park East, Suite 400N, Los Angeles, California 90067
www.rimonlaw.com | See Our 20 Offices on 3 Continents | Read Our Insights
Follow us on Twitter | Connect on LinkedIn | Like us on Facebook

*This e-mail is sent by a law firm and contains information that may be confidential or privileged.  If you have received this communication in error, please reply to the sender (only) and then please delete this message from your inbox as well as any copies. Thank you.*